[Crim. No. 470.  Second Appellate District.—May 22, 1916.]

## THE PEOPLE, Respondent, v. W. R. DEATRICK, Appellant.

CRIMINAL LAW — RAPE — EVIDENCE — CROSS-EXAMINATION OF PROSECU-TRIX.—In prosecutions for the crime of rape, while it is the duty of the trial court to exercise its discretion in the direction of permitting a very liberal, complete, and comprehensive cross-examination to be made of the prosecutrix, the mere fact that such discretion is not resolved as fully as it might have been in defendant's favor, does not justify a reversal of the judgment.

ID.—IMPOTENCY OF DEFENDANT—PROPER CROSS-EXAMINATION.—Where the defendant had introduced the testimony of two physicians tending to show that he was deficient in sexual power, and had also so testified in his own behalf, it is not error to permit the district attorney on cross-examination to ask him as to whether subsequent to the filing of the information, while staying at the house of a friend, he had not gone to the door of a woman's bedroom and asked permission to go into the room, saying: "I just want to see if I can raise my passions."

Id.—Impotency—Question for Jury.—It is for the jury to say whether the defendant was impotent and utterly incapable of performing the act with which he was charged.

Id.—Illicit Relationship of Prosecutrix with Third Person—Exclusion of Letters—Lack of Prejudice.—It is not prejudicial error to refuse to admit in evidence certain letters and cards of an intimate and confidential tenor, which passed through the mails between a third person and the prosecutrix, where it is shown by other evidence that the latter sustained illicit relations with such person.

Id.—Willingness of Defendant to Submit to Physical Examination —Improper Cross-examination—Instruction to Disregard— Lack of Prejudice.—It is error to ask the defendant on cross-examination as to whether he would be willing to submit himself for examination to a physician whom the court might select for the purpose of determining the condition of his sexual organs, but such error is not prejudicial, where the jury is instructed to disregard the testimony.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

Veitch & Richardson, for Appellant.

U. S. Webb, Attorney-General, and Robert M. Clarke, Deputy Attorney-General, for Respondent.

JAMES, J.—Defendant was convicted of the crime of rape, and sentenced by the trial court to serve a term of twenty-five years' imprisonment at San Quentin. The appeal is from the judgment, and from an order denying a motion for a new trial.

The act which was denounced by the information as making out the crime charged was alleged to have been accomplished with one Amy Deatrick, the adopted daughter of the defendant. It is alleged in the information that the child was of the age of fourteen years. It appears that the girl was brought into the family of the defendant by adoption when she was about the age of five years. The family lived at various places during the years succeeding the adoption of the child, and finally took up their residence at Belleflower in Los Angeles County, where the defendant engaged in the busi-

ness of raising poultry. The house in which they lived was a small building divided into three rooms. The household then consisted of defendant, the adopted child, and the defendant's wife. The child was sent to school, and was also provided with musical instruction by the defendant. The defendant hired a young man named Fay Detrick, who was not related to him in any way, although bearing a similar name. This young man occupied one of the rooms in the little house. In another of the rooms were two beds, in one of which defendant's wife and the little girl habitually slept, and the other, which was a single bed, the defendant used. After Fay Detrick had been in the house for about a month, or a little over, a dispute arose between the husband and wife which finally resulted in the wife leaving and going to the city of Los Angeles. The adopted daughter accompanied her, and neither of them afterward returned to the defendant's place. It was some time before the defendant learned the whereabouts of his wife and the girl, and before he had been able to see them he was arrested on the charge made by the information in this case. The theory upon which counsel for the defense presented their case was that this defendant was wholly innocent of the crime charged, and that his prosecution was brought about by his wife and the girl, through a spirit of revenge, and for the purpose of protecting Fay Detrick, with whom both Mrs. Deatrick and the girl Amy had sustained illicit relations. It was sufficiently shown by the admissions of Fay Detrick on the witness-stand that he had had sexual intercourse with Amy Deatrick, while he was working for the defendant at the Belleflower place. It was also shown that after Mrs. Deatrick and the girl came to the city of Los Angeles, Fay Detrick had visited them at their apartments, and had upon three occasions stayed at the apartments all night. However, the young girl gave testimony at the trial and directly charged that the defendant, not only on the day fixed in the information, but on a number of prior occasions, had sustained intimate relations with her. She said that she objected to these relations, but that they were insisted upon by the defendant. She did not deny having occupied the same bed with Fay Detrick while the latter was working for the defendant, but she claimed that this was with the permission and at the suggestion of the defendant himself. Mrs. Deatrick, who, after she left her husband, set up the claim that she had never been married to him,

was not called as a witness, and did not testify in the case. It was shown, in order to illustrate the erotic tendency of the defendant's mind, that he had made an improper proposal on one occasion to a young school friend of his daughter, while she was visiting at his house. It was further shown by the father of Fay Detrick that after the wife and girl had left defendant's house, defendant went to the home of Fay Detrick's parents and a conversation was there had in the presence of Fay Detrick. The witness in detailing the conversation made the following statement: " 'Well,' Fay says, that 'Mr. Bush was to tell you where you could find your wife.' 'Well,' he says, [meaning defendant], 'I seen Mr. Bush and he won't tell me.' 'Well,' Fay says, 'if he won't tell you, I won't tell you.' And he said—now says Fay, he says, 'If you will tell me where my wife is and the little girl is,' he says, 'I will let bygones be bygones.' He says, 'There will never be anything said about this nor nothing doing,' and he says, 'if you do not tell me there will be something done to-morrow.' 'Well,' says Fay, 'I will take my medicine.' Mr. Deatrick says, 'I will take mine,' and he says, he knew Fay, he says, 'you know that I had three witnesses outside watch you that night.' He says, 'I had three witnesses watching you that night, and I know just what you done,' and Fay says, 'I have never done anything worse than you have done.' He says, 'Amy has told me all about it.' So I think that that was just about all that he said to Fay then, only determined to know where he could find his wife—he was going to know that night." A physician who made a physical examination of the young girl after the charge had been preferred against the defendant, testified that he found her in much the condition of a married woman in his examination of her private organs. This, in brief, was the substance of the testimony introduced on behalf of the prosecution. It was shown in defense that the defendant was a man fifty-six years of age. Two physicians, who had made an examination of him, testified that his private organs were in such a state as to indicate to them that the defendant was impotent, and had no ability to perform an act of sexual intercourse. The defendant testified that he was unable to commit the crime charged, and testified that he did not have the intercourse with the girl as alleged; that he had discovered relations of intimacy between Fay Detrick and his wife, and also between Fay Detrick and Amy Deatrick; that upon mak-

ing this discovery he upbraided his wife and made a partial
threat to have Fay Detrick arrested; that the wife declared to
him that if he did cause the arrest of Fay Detrick, the three
of them, to wit, Mrs. Deatrick, Fay Detrick, and Amy Dea-
trick, would shift the charge to the defendant in order to save
Fay Detrick from prosecution. There was testimony given by
a number of witnesses, evidently reputable citizens of the
neighborhood of Belleflower, to the effect that the defendant's
reputation for the trait involved in this charge, and also for
honesty and integrity, was good. Under this state of the evi-
dence the case went to the jury and the verdict of guilty was
returned. This court on appeal cannot say that the evidence
was insufficient to justify the conviction, for there was ample
evidence to sustain the verdict of the jury. A number of
errors are assigned, many of which go to the matter of the
introduction of testimony, and the refusal of the court to
allow certain matters to be shown on the part of the defendant.

It is first claimed that the restriction imposed upon counsel
for the defendant in their cross-examination of the girl Amy
Deatrick, was too close, as to questions asked her designed to
extract admissions that there was a conspiracy on the part of
Mrs. Deatrick, Fay Detrick, and the witness to send defendant
to the penitentiary. While it is true that several of the ques-
tions to which objections were sustained were relevant and
proper as tending to elicit information as to the bias of the
witness, we find in the record that the same matters were in
their full substance covered by other questions which were
asked, and to which latter questions answers were permitted to
be made. We agree altogether with counsel for defendant that
in a case of this kind very wide latitude should be allowed the
cross-examiner. In a case where the charge is as that made
in the information here, and the prosecutrix is a young girl,
the sympathies and prejudices of the jury are very easily
aroused in her favor, and, as it has been very properly said,
the accusation is one which is easily made and hard to dis-
prove. However, while it is the duty of the trial court in
such cases to exercise its discretion in the direction of per-
mitting a very liberal, complete, and comprehensive cross-
examination to be made of the prosecutrix, the mere fact
that that discretion is not resolved as fully as it might have
been in the defendant's favor does not justify a reversal of
the judgment.

It is, secondly, objected that the court erred in refusing to admit in evidence certain letters and cards which passed through the mails between Fay Detrick and the prosecutrix. These missives were of an intimate and confidential tenor, but we cannot see how their rejection could have worked any prejudice to the defendant's case, inasmuch as it was abundantly shown, and without any dispute whatsoever, that the girl had sustained illicit relations with Fay Detrick. The contents of the letters certainly could not have argued to establish a more intimate relation than this.

Defendant had introduced the testimony of two physicians tending to show that he was deficient in sexual power. He testified on his own behalf, and stated that at the time charged in the information he was unable to accomplish an act of intercourse with any person. The prosecuting attorney in cross-examining him asked as to whether subsequent to the filing of the information, while staying at the house of a friend, he had not gone to the door of a woman's bedroom in the morning and asked permission to come into the room, saying: ''I just want to see if I can raise my passions.'' The admission of this testimony furnishes ground for vigorous objection made on behalf of appellant. It is claimed that the prosecuting attorney went outside the limits of a proper line of cross-examination. We do not think that the cross-examination was improper. The question was designed to show a contradiction of the assertion of the defendant that he was unable to accomplish sexual acts; to show that he had sought an opportunity to at least attempt such an act at a time subsequent to that charged in the information. The gist of the defendant's declarations on the witness-stand was that he was altogether without inclination in the direction mentioned, and the cross-examination was directly in point as being intended to show acts inconsistent with the defendant's declaration. There was no attempt to impeach the witness upon his answering in the negative.

It is contended that the evidence conclusively showed that the defendant was impotent, and utterly incapable of performing the act with which he was charged. That question was one for the jury, not for an appellate court, to resolve. There was direct and positive testimony that the defendant did in fact commit the crime charged. The testimony of the physicians did not wholly negative the possibility of the defendant

being able to accomplish an act of the kind described in the testimony; the jury was not bound either by the opinion of the physicians, or the statement of the defendant himself, as against the testimony of the prosecutrix and all of the circumstances shown in proof. At one point in the cross-examination of the defendant the prosecuting attorney asked him as to whether he would be willing to submit himself for examination to a physician whom the court might select. He answered in substance that he had been examined enough, and did not care to submit himself for the inspection of any more physicians. We have no doubt but that the asking of this question of the defendant on cross-examination and compelling an answer thereto, was error, but we are not prepared to conclude that the damage done was such as to produce in this case a miscarriage of justice. The trial judge was evidently doubtful of the propriety of permitting the question to be answered, for he said at the time: "I will state to the jury that as a matter of law, no defendant is required to testify against himself in any manner, and the submitting of one's self to an examination of this character, would be giving testimony against himself, so that in case he should decline to be examined, you must not in any regard consider that as testimony against him or draw any inference of any character against the defendant if he should so decline." In view of this direction to the jury, and in view of all of the testimony in the case, tending to show that the crime was committed as charged in the information, it would not be declaring a reasonable conclusion to say that the disinclination of the defendant to submit himself to further examination by physicians, as expressed in his answer to the question, may have turned the scales in the jury's mind in favor of the prosecution and prompted the verdict of guilty.

In the brief of counsel for appellant it is complained in a general way that certain offered instructions should have been given, certain of those given should have been refused, and modifications of others should not have been made. The argument addressed to these points is general, and does not point out specifically wherein error was committed. While it is the duty of counsel to not only specifically point to the instruction the giving, refusing, or modification of which they claim to be error, but to particularize as to the reasons supporting their contention, we have nevertheless made a careful exam-

ination of the whole charge as given by the court, and think
that it included and properly stated all the matters of law
upon which the jury needed to be advised. We agree with
counsel for appellant that the sentence imposed in this case,
that of twenty-five years' imprisonment, to a man now fifty-
seven years old, means a life sentence. But, however much
we might differ with the trial judge as to the propriety of such
a judgment, that is a matter which rests alone with the con-
science and discretion of the judge who heard the witnesses,
and it is not a part of the functions of an appellate tribunal to
enter upon any consideration of that question.

The judgment and order are affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court,
after judgment in the district court of appeal, was denied by
the supreme court on July 20, 1916.